IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

CHARLES BASTON,                          )
                                         )
            PLAINTIFF,                    )          CIVIL ACTION NO. _____
                                         )
     vs.                                  )
                                         )          HON.
THE DOW CHEMICAL COMPANY,                )
                                         )
            DEFENDANT.                     )
_____)

## COMPLAINT

PLAINTIFF, CHARLES BASTON, by and through his attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint and Demand for Trial by Jury against THE DOW CHEMICAL COMPANY.

## JURY DEMAND

COMES NOW PLAINTFF, and hereby makes his demand for trial by jury.

## JURISDICTION

1.     At all times relevant to this complaint, PLAINTIFF CHARLES BASTON was a resident of Saginaw, County in the State of Michigan.

2.     DEFENDANT THE DOW CHEMICAL COMPANY is a domestic profit corporation, which has a place of business in Midland, Michigan.

3.     This action is brought in this Court on the basis of federal question jurisdiction, pursuant to 42 U.S.C. § 1981.

4.     Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

1

## VENUE

5.      Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

6.      Plaintiff, a Black male, began his employment with Defendant Dow Chemical Company in November 2021.

7.      Throughout his employment, Plaintiff has been repeatedly passed over for promotions in favor of less qualified white employees.

8.      Plaintiff's initial supervisor, Joe Bushre, orchestrated fabricated complaints against Plaintiff, attempting to have him disciplined or terminated.

9.      Investigations into these incidents revealed that a white coworker, Mike Vanye, was responsible for frequent hazardous material spills, including one involving 3,000 kilograms of hazardous material, but Vanye faced no disciplinary action.

10.     Despite Plaintiff's innocence, Bushre continued to target Plaintiff with unfounded accusations, contributing to a hostile work environment.

11.     In mid-2022, Plaintiff filed an ethics complaint against Bushre, but Defendant took no corrective action and closed the complaint without resolving the issue.

12.     Plaintiff was passed over for promotions on multiple occasions, including a promotion given to a white coworker, Ryan Barror, who had less experience and qualifications.

13.     After Bushre's termination for unrelated reasons, Jason Ellis was appointed as Plaintiff's supervisor.

14.     Under Ellis' supervision, the discriminatory treatment persisted.

2

15. Plaintiff was passed over for an LT3 promotion in favor of a white employee, Brandon Bebe, who had less time on the job and fewer qualifications.

16. Another LT3 position was given to a white coworker, Ryan Mills, despite Plaintiff's qualifications for the role.

17. Ellis promised to put Plaintiff on the bid list for a bulk move position but later claimed he had forgotten, and the position was awarded to another white employee, Steve Peterson.

18. In June 2024, Plaintiff filed a second ethics complaint regarding Ellis' discriminatory conduct, but Defendant again failed to address Plaintiff's concerns.

19. Instead, Plaintiff was placed on medical leave for a week and referred to the Employee Assistance Program (EAP), further sidelining his career.

20. Plaintiff sought further assistance from human resources personnel, specifically Jessica Bruske, who dismissed his concerns and minimized the racial discrimination he experienced.

21. Plaintiff informed Bruske that he believed Ellis' actions were racially motivated, but Bruske defended Ellis and took no corrective action.

22. Following Plaintiff's complaint, he was subjected to an excessive overtime schedule, including seven consecutive days of work followed by only two days off, and then another nine consecutive days of work.

23. Plaintiff was eventually sent home by Dow's medical department in August 2024 due to the stress and hostile work environment.

24. White employees, including Bebe's associate, Mic Walcott, also subjected Plaintiff to verbal harassment. Walcott told Plaintiff to "shut the f*** up" in front of other employees.

25. Despite being the target of this abuse, Plaintiff received a verbal warning, and the incident was reported to human resources.

26.     Bebe further escalated tensions by confronting Plaintiff and threatening violence toward another coworker, yet no corrective action was taken by Defendant.

27.     In August 2024, Plaintiff requested a transfer to avoid confrontation with Bebe, but Bebe continued to try to intimidate Plaintiff until a training coordinator intervened.

28.     Plaintiff sought assistance from Dow occupational health and was placed on medical leave until August 26, 2024, due to the emotional distress caused by the hostile work environment.

29.     Plaintiff remains fearful of returning to work due to ongoing threats and harassment from Bebe.

30.     Defendant has permitted a racially hostile work environment to persist, causing Plaintiff severe emotional distress.

31.     Plaintiff has been the only Black employee in his building for an extended period.

32.     Other Black employees, including Anthony Miller and Trevion Jackson, have either resigned or been terminated due to racial discrimination.

33.     Defendant has consistently failed to address or correct the racially discriminatory practices and hostile work environment Plaintiff has endured.

34.     Plaintiff requests relief as set forth herein.

**COUNT I**

**RACIAL DISCRIMINATION IN VIOLATION OF 42 USC § 1981**

35.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

36.     42 U.S.C. § 1981 prohibits employers from intentionally discriminating against

individuals, including employees, in the making and enforcement of contracts.

37.  Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded him by the U.S. Constitution and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

38.  By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who are non-African American, to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

39.  The intentional discrimination on the basis of Plaintiff's race by Defendant that Plaintiff has experienced includes harassment and Defendant's refusal to promote him or treat him like other non-Black employees, causing him to have to take leave, which broke the contract between the parties.

40.  The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

41.  As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected.

42.  As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about her future, physical and emotional distress, and loss.

## COUNT II
## RETALIATION IN VIOLATION OF THE ELCRA

43.  Plaintiff incorporates by reference all allegations in the preceding paragraphs.

5

44. At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

45. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

46. Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

47. Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including speaking up about racial discrimination and harassment.

48. Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to agents of Defendant.

49. After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts.

50. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

51. Plaintiff notified Defendant and its agents of the unwelcome conduct and communication; however, Defendant failed to remedy the same.

52. As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

53. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

54. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III

## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")

55. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

56. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

57. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race or skin color.

58. Plaintiff is a Black man, and, as a result, is a member of a protected class pursuant to ELCRA.

59. Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class, as stated herein.

60. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

61. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

62. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

63. Plaintiff requests relief as described in the Prayer for Relief below.

7

**COUNT IV**
**HOSTILE WORKPLACE ENVIRONMENT IN VIOLATION OF THE ELCRA**

64.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

65.    At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

66.    A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

67.    Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

68.    Plaintiff's work environment, as alleged in the statement of facts made it so any individual who reported or spoke out against Defendant's discriminatory practices had an unworkable work environment.

69.    Moreover, Plaintiff's attempts to have the situation remedied, coupled with Defendant ignoring Plaintiff's complaints made the situation untenable.

70.    Additionally, Defendant treated Black employees such as Plaintiff in a hostile, intimidating, and offensive way.

71.    The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

72.   As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

73.   As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

74.   Plaintiff requests relief as described in the Prayer for Relief below

## RELIEF REQUESTED

PLAINTIFF, CHARLES BASTON, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;
2. Exemplary damages in whatever amount which Plaintiff is entitled;
3. An award of lost wages and the value of fringe benefits, past and future;
4. An award of interest, costs, and reasonable attorney fees; and
5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  September 13, 2024                    Respectfully Submitted,

CARLA D. AIKENS, P.L.C.

/s/ Carla D. Aikens
Carla D. Aikens (P69530)
Rejanaé M. Thurman (P85701)
615 Griswold St., Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com
rejanae@aikenslawfirm.com
*Attorneys for Plaintiff*

9